```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH GOETT,
                Plaintiff,
                                              ORDER
     -against-
                                              14cv8256 (MHD)
VI JETS INTERNATIONAL, INC., et
al.,
                Defendants.
```

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

The parties having agreed on terms to resolve this lawsuit, they now seek our approval of those terms. We have reviewed the Settlement Agreement and Release ("Agreement") submitted by the parties and for the reasons explained below, we approve it.

According to the complaint, plaintiff Joseph Goett was employed as an inside sales representative for defendants' business, arranging transportation by private jet for customers from April 2010 through July of 2014. (Compl. ¶¶ 12-14, 43; representations to the Court during a settlement conference held on March 2, 2015). In addition to his sales responsibilities,

1

starting in April of 2012 and for a thirteen-month period, Mr. Goett also developed software for defendants. (Compl. ¶¶ 27-33).

Plaintiff filed this suit, asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and various provisions of the New York Labor Law ("NYLL"), including N.Y. Lab. Law §§ 652 (minimum wage), 215 (retaliation), 191-c (sales commissions), 195 (wage theft prevention), and 193 (wage deductions). He has also asserted claims of contract breach and unjust enrichment. (Comp. ¶¶ 44-84). Mr. Goett brings his action solely for himself and has not sought to pursue a collective or class-action case.

On March 2, 2015 we held a settlement conference in this matter, at which time the parties reached an agreement in principle. Counsel for the parties now jointly submit the Agreement, along with documentation of plaintiff's attorney's hours and fee rates, defendants' confessions of judgments in case of a default on payments, and a letter explaining why we should

2

approve the Agreement. (Joint Letter, Ex. A & Ex. B, Doc. 26, March 16, 2015).

Under the terms of the Agreement, plaintiff will discontinue this action in exchange for $75,000.00, to be paid in eleven roughly equal installments, with the first payment upon approval and the remainder in ten monthly payments. (Agreement ¶ 1). Mr. Goett will receive a total of $56,250.00 and his attorney will receive a total of $18,750.00. (Id.).

The parties estimate that the best-case recovery by Mr. Goett if he prevailed on his FLSA and NYLL claims would be $116,500.00, representing $44,500.00 in unpaid commissions, $36,000.00 in unpaid overtime,[1] and $36,000.00 in liquidated damages on the overtime owed.[2] (Letter 1).[3] According to our calculations, Mr.

---

[1] Plaintiff documents 2054 hours of overtime in his complaint (Compl. Ex. A & B), and we understand that the estimate of $36,000.00 represents an average of $17.53 per hour for overtime he claims to have worked.
[2] The parties' letter misstates this total as $116,000.00.
[3] The parties' submissions make no reference to plaintiff's claims for breach of contract and unjust enrichment, but we

3

Goett would receive 48 percent of his maximum recovery under the Agreement, while the attorney's fee allocated to his counsel comes to 25 percent of the settlement funds.

### Analysis of the Settlement Agreement

A. General Standards

The FLSA strictly limits an employee's ability to waive claims for unpaid wages or overtime because of the inherent disadvantage an employee has in negotiation with an employer, and the trend among courts in this circuit is to scrutinize FLSA settlements. Camacho v. Ess-A-Bagel, Inc., et al., 2014 WL 6985633 *1 (S.D.N.Y. Dec. 11, 2014)(citing cases). We do so to ensure that the terms under which the employee has waived his rights under the FLSA are fair and reasonable. Id.; Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

---

infer that these claims would potentially yield the same $44,500.00, reflecting unpaid commissions.

We consider the totality of the circumstances in determining whether the Agreement is fair and reasonable, and are guided by the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky, 900 F. Supp. 2d at 335-36 (internal quotations omitted); accord Camacho, 2014 WL 6985633 at *2. We also scrutinize the Agreement for any factors that may weigh against approval, including:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

Id. (internal quotations omitted). We address these considerations in turn.

5

**B. Factors Weighing in Favor of Agreement**

The parties' assertion regarding plaintiff's maximum recovery under the FLSA and NYLL comports with the representations that they made to us during the March 2015 conference, and we have no reason to question the accuracy of their estimates. Although both sides faced a risk as to the outcome if they pursued the case to trial, we note that, at least with respect to overtime, plaintiff had a decided advantage, because of defendants' admitted lack of contemporaneous time records,[4] which would have given plaintiff's testimony and records a rebuttable presumption of accuracy. See, e.g., Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008).

That said, the agreement was reached early in the proceedings, reflecting the legitimate concerns of both sides to avoid time-consuming and potentially expensive litigation burdens, as well as

---

[4] Letter 2.

plaintiff's desire to put this matter behind him and focus on his new employment. (Letter 1-2). In addition, counsel notes that defendants' financial condition raised the specter of problems in enforcing any favorable judgment. (Id.; Representations to the Court During Settlement Conference held March 2, 2015).

We also observed first-hand that the parties bargained at arm's length. Indeed, the agreement for full payment within one year represents a significantly improved result for plaintiff over defendants' original demand -- stated at the settlement conference -- for smaller monthly payments over a much longer period of time. In addition, the terms contain a robust set of protections for plaintiff in the event of a default, as represented by five confessions of judgment for $100,000.00, to be held in escrow until full payment has been made.

The terms of the Agreement also do not require confidentiality or the discharge of plaintiff's rights other than those associated with this action -- two flaws that courts have found fatal to

7

similar proposed settlement agreements. See Camacho, 2014 WL 6985633 at *3-4 (withholding approval because of a confidentiality clause and a release that was too far-reaching); Wolinsky, 900 F. Supp. 2d at 338-341 (discussing at length why confidentiality is inconsistent with the public policy behind the FLSA).

### C. Factors Weighing Against Approval

The parties explain that there are no other similarly situated employees (Letter 2), and since plaintiff has moved on to new employment, he faces no risk of a recurrence of the alleged harm. (Id.). The parties agree that this is the first lawsuit against defendants for these types of violations and that there are no novel legal principles embedded in this action that would further the development of the law for this industry or workplace. (Id).

### D. Attorney's Fees

As for the attorney's fee portion of the Agreement, the court must also assess the reasonableness of the allocation for fees. See, e.g., Enriquez v. Woo Young Emporium, 2014 WL 7392909, *2 (S.D.N.Y. Dec. 29, 2014). "In this circuit, a proper fee request

8

'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" Lopez v. Nights of Cabiria, LLC, 2015 WL 1455689, *7 (S.D.N.Y. Mar. 30, 2015)(quoting Wolinsky, 900 F. Supp. 2d at 336); see N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Factors that we consider to determine whether an attorney's fees are reasonable include the time expended by counsel, the complexity of the case, the risks to litigation, the quality of the representation, the size of the fee relative to the settlement labor; and any policy implications. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000). The courts here honor a presumption that an attorney's lodestar calculation -- reasonable fees times reasonable hours spent, Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) -- will be appropriate in FLSA matters, but courts may increase or reduce that award as the circumstances warrant. Enriquez, 2014 WL 7392909 at *2 (citing N.Y. State Ass'n for Retarded Children, Inc., 711 F.2d at 1148). Courts generally approve fees that are as much

9

as 30-35 percent of an FLSA settlement fund. See Enriquez, 2014 WL 7392909 at *3 (citing cases); Thornhill v. CVS Pharmacy, Inc., 2014 WL 1100135, *3 (S.D.N.Y. Mar. 20, 2014)(rejecting fees that represented over 50 percent of the settlement fund).

Here, the parties have provided time records for plaintiff's counsel and assert -- and provide time records to demonstrate -- that his lodestar calculation of $425.00 per hour for 40.1 hours would be $17,634.50, including filing fees. (Letter 2 & Ex. B). None of the entries in the time records strike us as obviously duplicative or otherwise needless. Moreover, a rate of $425.00 in this district is generally appropriate for a litigator with sixteen years of experience. See Mireku v. Red Vision Sys., Inc., 2013 WL 6335978, *2 (S.D.N.Y. Dec. 6, 2013)(citing cases). Finally, considering that the retainer agreement between plaintiff and his client specified a fee amounting to 25 percent of recovery, and that this percentage is less than the 30 percent commonly approved in this district for FLSA cases, we do not find any reason to deny counsel his fee of $18,750.00 under the Agreement, which is only

$1,115.50 more than his lodestar calculation.

### Conclusion

For the reasons stated above, we approve the parties' Agreement. Accordingly, the Clerk of the Court is directed to close this case.

**Dated: New York, New York**
      **April 22, 2015**

                              **SO ORDERED.**


                               _____
                              **MICHAEL H. DOLINGER**
                              **UNITED STATES MAGISTRATE JUDGE**


Copies of the foregoing Order have been sent today to:

Russell E. Adler, Esq.
Fax: 888-636-2303

Ivan Saperstein, Esq.
Fax 914-251-0969

11